UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
------------------------------------------------------------- X
IN THE MATTER OF THE SEIZURE OF ALL    :
FUNDS ON DEPOSIT AT UNION BANK, N.A.   :
IN SAN DIEGO, CALIFORNIA IN ACCOUNTS   :    09 CV. 1495 JM (RBB)
3530000248 AND 3530000256, AND ALL     :
FUNDS ON DEPOSIT AT WELLS FARGO        :
BANK IN ESCONDIDO, CALIFORNIA IN       :
ACCOUNT NUMBER 7986104185, HELD IN     :
THE NAME OF ACCOUNT SERVICES           :
CORPORATION, AND ALL PROPERTY          :
TRACEABLE THERETO.                     :
------------------------------------------------------------- X
ACCOUNT SERVICES CORPORATION,          :
                                       :
                Movant,                :
                                       :
            -v.-                       :
                                       :
UNITED STATES OF AMERICA,              :
                                       :
                Respondent.            :
------------------------------------------------------------- X

## THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO ACCOUNT SERVICES CORPORATION'S MOTION FOR RETURN OF PROPERTY

Scheduled for Argument: August 21, 2009 at 1:30 p.m.
Oral Argument Not Required

                                  LEV L. DASSIN
                                  Acting United States Attorney
                                  Southern District of New York
                                  Attorney for United States of America

JEFFREY ALBERTS
Assistant United States Attorney
- Of Counsel –

## INTRODUCTION

The Government respectfully submits this memorandum of law in opposition to the motion of Account Services Corporation ("ASC"), pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, for return of property. ASC seeks an order from this Court compelling the Government to return funds seized from three bank accounts pursuant to seizure warrants issued in the Southern District of New York. ASC argues that the Court should exercise anomalous civil jurisdiction over their motion brought under a criminal rule because "the Government has not instituted proceedings for forfeiture on either a criminal or civil basis." (ASC Mem. at 6.) However, the Government now has initiated criminal forfeiture proceedings for the seized funds, and there is no basis for this Court to exercise anomalous jurisdiction over ASC's motion.

ASC's notice of motion was filed prematurely, less than six weeks after the funds were seized and prior to any deadline for initiating a forfeiture action. On August 5, 2009—after ASC filed its notion of motion for return of property, but before the return date of the motion itself—Indictment 09 Cr. 752 (SHS) was filed in the Southern District of New York (the "Rennick Indictment"). The Rennick Indictment provided notice that the Government would seek to forfeit the funds that are the subject of ASC's motion before this Court for return of property.

The Court should decline to exercise anomalous jurisdiction over ASC's motion for return of property because the pending criminal action is the proper action in which the Government's basis for seizing and forfeiting the seized funds may be litigated. There is no legal or equitable justification for permitting Rennick to collaterally attack—through ASC—the criminal forfeiture of the funds through a civil action in this Court while his criminal case in another district is ongoing.

1

## FACTUAL BACKGROUND

On June 2, 2009, Magistrate Judge Theodore H. Katz issued a seizure warrant in the Southern District of New York against all funds on deposit at Well Fargo Bank in San Francisco in account number 7986104185 held in the name of Account Services, Inc. (the "Wells Fargo Account"). (Alberts Decl. ¶ 3.)

On or about June 12, 2009, the Government sent a letter to Union Bank, N.A. ("Union Bank"), notifying Union Bank that exigent circumstances require that funds in accounts numbered 353000248 and 353000256, held in the name of Account Services Corp (the "Union Bank Accounts"), be frozen immediately to prevent them from being dissipated and requesting that the bank freeze the funds as authorized in *United States v. Daccarett*, 6 F.3d 37 (2d Cir. 1993). (Alberts Decl. ¶ 4.)

On June 24, 2009, Magistrate Judge Henry B. Pitman issued a seizure warrant in the Southern District of New York against all funds on deposit in the Union Bank Accounts. (Alberts Decl. ¶ 5.)

The seizure warrant for the Wells Fargo Account (the "Wells Fargo Warrant") and the seizure warrant for the Union Bank Accounts (the "Union Bank Warrant" and, together with the Wells Fargo Warrant, the "Warrants") both stated that an affidavit was sworn to before the Court by Dana Conte, a Special Agent of the Federal Bureau of Investigation, that the agent has reason to believe that the funds specified in the above-captioned bank account are subject to seizure and forfeiture (the "Conte Warrant Affidavits"). The Warrants both further state, "I am satisfied that there is probable cause to believe that the property so described is subject to seizure and civil forfeiture." The Warrants commanded the United States Marshal or other authorized law

enforcement officer to seize the funds in the Wells Fargo Account and the Union Bank Accounts. (Alberts Decl. Exs. 1, 3.)

On July 4, 2009, ASC served a letter on the Government requesting that the Government return funds seized from the Wells Fargo Account and the Union Bank Accounts. The letter stated that, "if you fail to respond to this request by returning the funds within 15 days we will take all available measures, including the filing of a motion in federal court for return of the property." (Alberts Decl. Ex. 4.)

On July 10, 2009, ASC filed a motion pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the return of the funds seized from the Wells Fargo Account and the Union Bank Accounts by the Government. (Alberts Decl. ¶ 7.)

On August 5, 2009, the Rennick Indictment was filed in the Southern District of New York. The Rennick Indictment provided notice that the Government would seek to forfeit the funds that are the subject of ASC's motion for return of property. An arrest warrant for Douglas Rennick was issued on the basis of the Rennick Indictment. (Alberts Decl. ¶ 8.)

## DISCUSSION

"Where no criminal proceeding is pending, a district court has discretion to hear a motion for the return of property" under Rule 41(g) of the Federal Rules of Criminal Procedure, "as a civil equitable proceeding." *Kardoh v. United States*, --F.3d--, 2009 WL 1978825, at * 2 (9th Cir. 2009) (citing *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005)). Rule 41(g) provides that:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property

to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).

When a motion for return of property is brought in the absence of a criminal proceeding, "the Ninth Circuit has recognized an inherent power of the courts termed 'anomalous jurisdiction' or 'equitable jurisdiction' to permit review of a pre-indictment motion pursuant to Fed. R. Crim. P. 41(g)." *In re Application of Farrar*, No. 07-00019 DAE-KSC, 2007 WL 601985, *2 (D. Hawai'i Feb. 21, 2007) (citing decisions including *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993)). That power "is not meant to be applied liberally, however," *id.*, and "should be exercised sparingly," *Guerra v. United States*, 645 F. Supp. 775, 778 (C.D. Cal. 1986). "A district court must exercise 'caution and restraint' before assuming jurisdiction." *Ramsden*, 2 F.3d at 324 (quoting *Kitty's East v. United States*, 905 F.2d 1367, 1370 (10th Cir. 1990)).[1]

"To prevent the district courts from exercising their equitable jurisdiction too liberally," the Ninth Circuit has identified various factors that a district court should consider "before a district court can reach the merits of a preindictment Rule 41(e) motion." *Ramsden*, 2 F.3d at 324. These factors include:

> 1) whether the Government displayed a callous disregard for the constitutional rights of the movant;
>
> 2) whether the movant has an individual interest in and need for the property he wants returned;

---

[1] Some of these cited decisions were made under Rule 41(e) of the Federal Rules of Criminal Procedure. The substance of the current Rule 41(g) was in Rule 41(e) until Rule 41 was amended in 2002. Because "the substance of the rule has not changed," in this memorandum of law decisions under Rule 41(g) and the former Rule 41(e) are cited interchangeably and treated as made under the current Rule 41(g). *Kama*, 394 F.3d at 1238 n.1.

4

> 3) whether the movant would be irreparably injured by denying return of the property; and
>
> 4) whether the movant has an adequate remedy at law for the redress of grievance.

*Id.* at 325 (citing *Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975)). In particular, the Ninth Circuit has held that where the movant has an adequate remedy at law, "there is no need to fashion an equitable remedy to secure justice for the claimant." *United States v. U.S. Currency, $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988).

If a district court should decide to exercise anomalous jurisdiction over a Rule 41(g) motion, it should treat "the motion as a civil complaint governed by the Federal Rules of Civil Procedure." *United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008). These rules "apply to each stage of the proceedings, the same way they would in the civil context." *Id.* at 1008. Thus, if and only if a district court decides to exercise anomalous jurisdiction over a Rule 41(g) motion, it may then consider a motion by the Government to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, or a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See id.* Should the Court deny the Government's motion for summary judgment, "the court should go forward with additional proceedings consistent with the Federal Rules of Civil Procedure." *Id.*

The issue currently before the Court is limited to whether it should exercise anomalous jurisdiction over ASC's motion for return of property and convert it into a civil complaint governed by the Federal Rules of Civil Procedure. The Court should decline to exercise anomalous jurisdiction and deny ASC's motion for return of property because the property is the subject of a criminal forfeiture proceeding. In addition, even if no criminal forfeiture proceeding

5

had been brought, this case is not one of those rare circumstances in which the exercise of anomalous jurisdiction is justified.

I.  **The Court Should Deny the Motion for Return of Property Because the Property is the Subject of a Criminal Forfeiture Proceeding.**

Because a Rule 41(g) motion "is an equitable remedy that is available only when there is no adequate remedy at law," federal courts have held that a pending administrative, civil, or criminal forfeiture proceeding affords "an adequate remedy at law and thereby justifies dismissal of the Rule 41(g) motion." *Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006) (citing court of appeals opinions from various circuits). Indeed, in *United States v. U.S. Currency, $83,310.78*, the Ninth Circuit noted that one function of a Rule 41(g) motion is as an "action to trigger the filing of a forfeiture proceeding" 851 F.2d at 1234 (citing *United States v. $8,850 in United States Currency*, 461 U.S. 555, 569 (1983)). The court affirmed the denial of a Rule 41(g) motion based on the subsequent filing of a civil forfeiture action, observing that the movant apparently "was successful in triggering the instant filing of a forfeiture proceeding wherein she could assert her right to a return of her property or a suppression of the evidence." *Id.*

The justification for denying a Rule 41(g) motion once the seized property is identified in a criminal indictment as subject to forfeiture is particularly strong. Not only is a criminal forfeiture action an adequate remedy, it is the *only* available remedy once an indictment is filed. *See* 21 U.S.C. § 853(k).[2] Third parties are barred "from bringing independent suits against the

---

[2] Title 21, United States Code, Section 853(k) provides in relevant part that "no party claiming an interest in property subject to forfeiture under this section may (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section."

6

United States once an indictment alleging that the property is subject to forfeiture has been filed." *United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir. 2005). The exclusive remedy available to third parties is to petition for an ancillary proceeding regarding the property in the criminal action itself under 21 U.S.C. § 853(n). *Id.*

While ASC filed its Rule 41(g) notice of motion before the Rennick Indictment was filed, and therefore arguably escaped the absolute bar on filing an independent action for return of property, the availability of a remedy in the criminal proceeding removes any need for the Court to exercise anomalous jurisdiction. Just as "there is no need to fashion an equitable remedy" by exercising anomalous jurisdiction when a civil forfeiture action is filed after a Rule 41(g) motion is made, *see U.S. Currency, $83,310.78*, 851 F.2d at 1235, the Court should not exercise anomalous jurisdiction after a criminal forfeiture action is filed, *Almeida*, 459 F.3d at 382-83 (citing *U.S. Currency, $83,310.78*).

Fashioning an equitable remedy allowing ASC to attack the criminal forfeiture action would be particularly pernicious in this case because the Rennick Indictment asserts that ASC is controlled by Rennick. Rennick also signed the declaration submitted in support of ASC's motion. (*See* Alberts Decl. Ex. 5.) Allowing Rennick to challenge the criminal forfeiture pending in the Southern District of New York through a civil action brought in the Southern District of California, based on the Court's anomalous jurisdiction over a motion brought under criminal procedural rules would be inappropriate. Rennick would then be able to invoke civil discovery rules that do not apply in criminal actions. He also theoretically could seek to litigate the civil action through ASC while eluding prosecution in the Southern District of New York.[3]

---

[3] An arrest warrant has issued for the arrest of Douglas Rennick. Rennick has not yet been arrested or surrendered voluntarily to face the charges.

7

II. **ASC Also Fails to Make the Equitable Showing Necessary for the Court to Exercise Equitable Jurisdiction Over a Pre-Indictment Motion for Return of Property.**

Even if the Rennick Indictment had not been filed, the Court still would not have had an adequate basis to exercise anomalous jurisdiction over ASC's Rule 41(g) motion under the factors identified by the Ninth Circuit. Given that federal judges issued seizure warrants for the seized properties based upon a finding of probable cause to believe that the properties were forfeitable, there is no basis for concluding that the Government displayed a "callous disregard" for the constitutional rights of the movants. *See Meredith v. Erath*, No. 99CV13100, 2001 WL 1729626, at *4 (C.D. Cal. Sept. 19, 2001) (reasoning that a district court "cannot conclude" that the government "displayed a callous disregard for the constitutional rights of the movants," if the government "obtained a valid warrant for the seizure of the property").

As for ASC's assertion of need for the property and irreparable harm, these arguments actually provide further reason to deny its motion. ASC claims that it needs the property because it has an obligation to transfer these funds to online poker players. (ASC Mem. at 17.) This argument concedes that ASC seeks to obtain the funds with the intent of dissipating them, which would make them unavailable for criminal forfeiture. This is a strong reason to deny ASC's motion. An additional reason why motions to return funds are disfavored is that because funds are "neither perishable nor unique," it is rare that injuries that a claimant might suffer in the absence of those funds are irreparable. For example, ASC's clients bouncing checks is not, as ASC claims, an irreparable injury.

Finally, ASC's argument that it has no adequate remedy at law for redress was premature. The policy of the Department of Justice is to commence a forfeiture action within 90 days of the receipt of a written request for the release of the property from a potential claimant, or, where administrative forfeiture is statutorily authorized but is not pursued, within 150 days of the

seizure of the property.[4] ASC's motion was filed less than six weeks after the first seizure of the funds that ASC now seeks to have returned and less than one week after ASC sent the Government a written request for the release of the property. It therefore was premature for ASC to argue that unless this Court crafted an equitable remedy through the exercise of anomalous jurisdiction, it would not have a remedy available to challenge the seizure of the property. *See Farrar*, 2007 WL 601985, at *2 (government's application for two extensions of the 90-day deadline for filing a civil forfeiture action did not establish the absence of a remedy, because "once the Government initiates its civil and/or criminal judicial forfeiture proceedings, Movants may challenge the seizure of the property"). Accordingly, even in the absence of a criminal forfeiture action, the Court should have denied ASC's motion for return of property.

---

[4] Funds in a bank account may be administratively forfeited if the funds seized are less than $500,000. *See* 19 U.S.C. § 1607. The funds seized from both Wells Fargo Account and the Union Bank Accounts are greater than $500,000. Accordingly, these accounts are not subject to administrative forfeiture.

## CONCLUSION

For all of the foregoing reasons, the Government respectfully request that this Court deny Account Services Corporation's motions for return of property.

Dated:  New York, New York
        August 7, 2009

                                            LEV L. DASSIN
                                            ACTING UNITED STATES ATTORNEY
                                            SOUTHERN DISTRICT OF NEW YORK

                                 By: _____
                                    Jeffrey Alberts
                                    Assistant United States Attorney
                                    Telephone:  (212) 637-1038