Michael Pancer (State Bar No. 43602)
LAW OFFICES OF MICHAEL PANCER
105 West F Street, 4th Floor
San Diego, CA 92101
Tel: (619) 236-1826
Fax: (619) 233-3221
mpancer@hotmail.com

L. Barrett Boss (*admitted pro hac vice*)
COZEN O'CONNOR
1627 I Street, N.W., Suite 1100
Washington, D.C. 20006
Tel: (202) 912-4818;   Fax:  (866) 413-0172
bboss@cozen.com

Attorneys for Movant
Account Services Corporation

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Seizure of ALL FUNDS ON DEPOSIT AT UNION BANK, N.A., IN SAN DIEGO, CALIFORNIA, IN ACCOUNTS 353000248 AND 353000256, AND ALL FUNDS ON DEPOSIT AT WELLS FARGO BANK, IN ESCONDIDO, CALIFORNIA, IN ACCOUNT NUMBER 7986104185, HELD IN THE NAME OF ACCOUNT SERVICES CORPORATION, AND ALL PROPERTY TRACEABLE THERETO, <br><br> ACCOUNT SERVICES CORPORATION, <br><br>                         Movant. <br> UNITED STATES OF AMERICA, <br><br>                         Respondent. | CASE NO. 09-CV-1495 JM RBB <br><br> ACCOUNT SERVICES CORPORATION'S REPLY TO THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO ACCOUNT SERVICES CORPORATION'S MOTION FOR RETURN OF PROPERTY |

# INTRODUCTION[1]

In June 2009, the government unreasonably seized over $14 million from three accounts owned by Account Services Corporation ("ASC") without first initiating any forfeiture action and, in the case of two of the three accounts seized, without a warrant.[2] ASC filed a Motion for Return of Property with this Court on July 10, 2009, asserting that the accounts were unreasonably seized because neither ASC, nor the individuals for whom ASC was holding money in the accounts, violated the law. Only two days prior to the date the government's opposition was due, on August 5, 2009, Douglas Rennick, President of ASC, was indicted in the Southern District of New York on three conspiracy counts (bank fraud, money laundering, and gambling). Included in the indictment against Mr. Rennick were forfeiture allegations pursuant to 18 U.S.C. § 982, which identify the funds seized from ASC's accounts at Wells Fargo and Union Bank.[3]

Now, the government is attempting to prevent ASC from recovering its property by arguing that the criminal indictment and notice of criminal forfeiture against Mr. Rennick abrogates any basis for this Court to exercise jurisdiction over ASC's claim. The government's argument is based upon the premise – supported only by the government's own allegation – that ASC is Mr. Rennick's "alter ego." Such an allegation is not only contrary to law and contrary to a position taken by the government only two weeks prior to filing its opposition,[4] but surreptitiously would allow the government to criminally forfeit ASC's accounts without having to obtain a grand jury indictment against ASC. The government's arguments would further deprive ASC of any adequate remedy whatsoever because ASC

---

[1] For a detailed review of the factual background in this case, please see Movant's Mem. of P. & A. 2-5.
[2] The seized accounts were held at Wells Fargo Bank ("Wells Fargo") and Union Bank, N.A. ("Union Bank") in California.
[3] It is worth noting that there is no allegation in the indictment that Mr. Rennick conspired to commit bank fraud with regard to Wells Fargo; however, the forfeiture allegation as to the bank fraud count includes the funds held at Wells Fargo.
[4] See Exhibit 1, which has been filed under seal.

1
**ASC'S REPLY RE: MOTION FOR RETURN OF PROPERTY; CASE NO: 09-CV-1495**

would be barred from raising any challenge to the seizure of its property until the criminal prosecution of Mr. Rennick is resolved, which could mean months or – more likely – years before ASC could seek to assert its rights. This is unacceptable.

## ARGUMENT

I. The Government Fails to Demonstrate that ASC has not Asserted a Plausible Claim.

This Court must treat ASC's Rule 41(g) motion as a civil complaint because no criminal proceedings were pending at the time the motion was filed. The government inaccurately states that "if and only if a district court decides to exercise anomalous jurisdiction over a Rule 41(g) motion" may it treat the 41(g) motion as a civil complaint. Gov.'s Opp'n 5. This statement is completely unsupported by law. The very case upon which the government relies – in fact, the very same sentence – explains that the crucial inquiry is whether "criminal proceedings [are] pending at the time of filing." *United States v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008); *see also United States v. Ritchie*, 342 F.3d 903, 906 (9th Cir. 2003) (citing *United States v. Martinson*, 809 F.2d 1364 (9th Cir. 1987)). Conveniently, the government omitted the beginning of the sentence from its brief. In this situation, the Court must treat ASC's Rule 41(g) motion as a civil complaint, and the government's opposition as a Rule 12(b)(6) motion to dismiss. *See Ibrahim*, 522 F.3d at 1007 (citing *Ritchie*, 342 F.3d at 907) (explaining that the government's opposition to a Rule 41(g) motion should be treated "as the equivalent of a 12(b)(6) motion to dismiss" unless the district court must consider evidence outside the pleadings).

This Court may only dismiss ASC's Rule 41(g) motion at this stage if there could be no scenario under the facts alleged which would entitle ASC to relief. Consequently, because the facts asserted by ASC in its motion establish the Court's jurisdiction and support a plausible claim that the government

1 unreasonably seized ASC's accounts, the Court should not dismiss ASC's 41(g)
2 motion. When reviewing a Rule 12(b)(6) motion to dismiss, the court must accept
3 all "well-pleaded statements of fact" as true and "construe them in the light most
4 favorable" to the movant. *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 911 (9th Cir.
5 2004) (internal citation omitted). In order to survive a motion to dismiss, the
6 complaint "must contain sufficient factual matter, accepted as true, to 'state a claim
7 to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. __ (2009) (citing
8 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially
9 plausible if "the plaintiff pleads factual content that allows the court to draw the
10 reasonable inference that" plaintiff is entitled to relief. *Id*. ASC's claim is based
11 upon factual allegations that, taken as true, prove that ASC could not have violated
12 the laws upon which the government justified seizing ASC's accounts.[5]
13 Consequently, this complaint should not be dismissed, and the case "should go
14 forward with additional proceedings consistent with the Federal Rules of Civil
15 Procedure." *Ibrahim*, 522 F.3d at 1008.
16 II.   <u>The Indictment of Mr. Rennick Does Not Bar ASC's Rule 41(g) Motion</u>.
17       ASC and Mr. Rennick are separate and distinct legal persons, despite the
18 government's assertions to the contrary. Overlooking the fact that ASC filed this
19 motion *before* Mr. Rennick was indicted, the government describes ASC's Rule
20 41(g) motion as Mr. Rennick's personal "challenge [to] the criminal forfeiture
21 pending in the Southern District of New York through a civil action brought in the
22 Southern District of California." Gov.'s Opp'n 7. The government further claims
23 that "allowing ASC to attack the criminal forfeiture action would be particularly
24 pernicious in this case because the Rennick Indictment asserts that ASC is
25 controlled by Rennick."[6] *Id*. In other words, the government is arguing that a

---

[5] From the recently unsealed portions of the Affidavit in Support of Seizure, it is clear that ASC's original assumption that the seizures were predicated upon violations of 18 U.S.C. § 1955 was correct.
[6] Movant does not regard as a coincidence the government's indictment of Mr. Rennick only two days before its opposition was due, and its subsequent attempt to argue that the indictment forecloses the Court's ability to hear ASC's motion. This

3
ASC'S REPLY RE: MOTION FOR RETURN OF PROPERTY; CASE NO: 09-CV-1495

claim made in the indictment of an individual, strategically issued in relation to the pre-existing Rule 41(g) motion, should be construed as fact in a separate pleading against a company the government decided not to indict. This argument is inherently flawed.

Moreover, the government's bald assertion that ASC is essentially Mr. Rennick's "alter ego" is utterly unsupported by law or fact. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (internal citation omitted). Moreover, "[t]he veil separating corporations and their shareholders may be pierced in some circumstances . . . [t]he doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Id*. at 475. The government has not even made an argument that the veil between Mr. Rennick and ASC should be pierced; absent such a showing, the government's assertion that ASC's Rule 41(g) motion is a personal attack by Mr. Rennick is completely without merit, particularly at the Rule 12(b)(6) stage of the proceedings.

**A.  Section 853 is not ASC's exclusive remedy because ASC filed its 41(g) motion prior to the notice of criminal forfeiture against Mr. Rennick**.

The government argues that ASC's Rule 41(g) motion should be denied because the criminal forfeiture action is the "*only* available remedy." Gov.'s Opp'n 6. The law is clear, however, that Rule 41(g) motions filed prior to a criminal indictment or notice of criminal forfeiture are not barred by 21 U.S.C. § 853(k). The plain language of the statute provides: "no party claiming an interest in property forfeited under this section may . . . commence an action at law or equity against the United States concerning the validity of his alleged interest in

---

argument is not only contrary to law, but also seeks to have this Court ignore the fact that the government decided not to indict ASC, owner of the accounts and movant in this action. On this basis, the Court should be even more cautious before declining to exercise jurisdiction and allow ASC its day in court.

4
**ASC'S REPLY RE: MOTION FOR RETURN OF PROPERTY; CASE NO: 09-CV-1495**

1   the property *subsequent* to the filing of an indictment or information alleging that
2   the property is subject to forfeiture under this section." 21 U.S.C. § 853(k)(2)
3   (2009) (emphasis added).  The courts have recognized as a corollary to the
4   statutory language that the bar of § 853(k) "does not in plain terms affect the Rule
5   41(g) motions of [movants] which were filed before [the criminal defendant's]
6   indictment."  *De Almeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006; *see*
7   *also United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir. 2005) (explaining that
8   third parties are only barred "from bringing independent suits against the United
9   States *once an indictment alleging that the property is subject to forfeiture has*
10  *been filed*.") (emphasis added).  Indeed, the government concedes that ASC
11  "arguably escaped the absolute bar on filing an independent action for the return of
12  property."  Gov.'s Opp'n 7.  Therefore, the notice of criminal forfeiture does not
13  compel this Court to abdicate its jurisdiction over ASC's 41(g) motion.
14      The government also alleged in its opposition that ASC's Rule 41(g) motion
15  was premature because the deadline for the government to file a forfeiture action
16  had not yet expired.  Gov.'s Opp'n 1.  The government clearly misses the entire
17  purpose of Rule 41(g): to allow a party to challenge the seizure of its property
18  before the government initiates forfeiture proceedings.  *See*, e.g., *United States v.*
19  *U.S. Currency $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988) (explaining that an
20  equitable remedy is necessary to secure justice for the claimant when no forfeiture
21  proceeding is pending).  The government's assertion equates to a claim that ASC
22  should have sat on its rights and waited until the unequivocal bar of § 853(k)
23  applied.  Criminal forfeiture is an incredibly potent weapon in the government's
24  arsenal which can, as the government is attempting to here, be used abusively.  In
25  fact, the Ninth Circuit has described forfeiture as a "'harsh and oppressive
26  procedure' which is not favored by the courts."  *United States v. $191,910.00 U.S.*
27  *Currency*, 16 F.3d 1051, 1069 (9th Cir. 1994).  Because of the very limited rights
28  provided to persons with an interest in forfeited property; notably, rights of which

1  the government continues to try to divest ASC, the Court should be particularly
2  circumspect before depriving ASC of its day in court.
3       **B.     There are no criminal proceedings pending against ASC.**
4       Furthermore, because there are no criminal proceedings pending against
5  ASC, this Court retains jurisdiction over ASC's Rule 41(g) motion.  It is
6  undisputed that "district courts have the power to entertain motions to return
7  property seized by the government when there are no criminal proceedings pending
8  *against the movant.*"  *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005)
9  (emphasis added); *see also De Almeida*, 459 F.3d at 379-80 (explaining that where
10 "no criminal proceedings *against the movant* are pending or have transpired,"
11 equitable relief is available under Rule 41(g)) (emphasis added).  Notwithstanding
12 the fact that a criminal proceeding may arguably provide an adequate remedy for
13 Mr. Rennick to contest a seizure, it certainly does not provide the same remedy for
14 ASC.
15 III.  <u>This Court Should Exercise Jurisdiction Over ASC's Rule 41(g) Motion</u>.
16      It is well settled that a district court should exercise equitable jurisdiction
17 over a Rule 41(g) motion if "'the balance of equities tilts in favor of reaching the
18 merits' of the motion" after considering whether: (1) "the government displayed a
19 callous disregard for the constitutional rights of the movant;" (2) "the movant has
20 an individual interest in and need for the property he wants returned;" (3) "the
21 movant would be irreparably injured by denying return of the property;" and (4)
22 "the movant has an adequate remedy at law for the redress of his grievance."
23 *Kama*, 394 F.3d at 1238 (internal citation omitted).  Here, the balance of the
24 equities, pursuant to the facts alleged by ASC, directs this Court to reach the merits
25 of ASC's 41(g) motion: ASC has no adequate remedy at law, ASC will suffer
26 irreparable injury if its motion is denied, ASC owns the property seized and has a
27 need for its return, and the government displayed a callous disregard for ASC's
28 constitutional rights when it seized ASC's accounts.

**A.     ASC remains without an adequate remedy at law.**

If this Court were to dismiss ASC's Rule 41(g) Motion as the government requests, ASC's sole means of redress would be through an ancillary proceeding under 21 U.S.C. § 853(n).  *See De Almeida*, 459 F.3d at 381 ("An ancillary proceeding is evidently the *only* avenue for a post-indictment third-party claim to forfeited property"); *Nava*, 404 F.3d at 1125 ("Section 853(n) is the exclusive proceeding in which third parties may claim interests in property subject to criminal forfeiture. . . . once an indictment alleging that the property is subject to forfeiture has been filed.").  Third parties must, however, "await the defendant's conviction before filing proceedings to protect their interest in the property and must await the court's order of forfeiture before requesting an ancillary hearing." *Nava*, 404 F.3d at 1125 (internal citations omitted).

The government offers only the illogical and unsupported argument that "the Court should not exercise anomalous jurisdiction after a *criminal* forfeiture action is filed," because there is no need to "exercise[] anomalous jurisdiction when a *civil* forfeiture action is filed after a Rule 41(g) motion is made." Gov.'s Opp'n 7 (emphasis added).  The government's argument miscomprehends the distinction between a criminal and a civil forfeiture: whereas a criminal forfeiture operates *in personam* and may only be challenged by a third party through an ancillary proceeding after the conclusion of the criminal prosecution; a civil forfeiture operates *in rem*, and a party may immediately file a notice of claim and assert its interest in the seized property.  *See Nava*, 404 F.3d at 1124 (internal citation omitted).  In fact, the court in *De Almeida*, the case upon which the government appears to rely in making this argument, specifically states that "*[t]he analogy between civil and criminal forfeiture is imperfect* [because a] third-party claimant contesting a criminal forfeiture *may lack an adequate remedy at law* if the claimant faces months or years of delay before the claimant may seek an ancillary proceeding in the criminal forfeiture action." 459 F.3d at 382 (emphasis added).

That is precisely the situation here. It is likely to take months, if not years, until this prosecution is resolved, prior to which point ASC will not be able to seek an ancillary proceeding in the criminal forfeiture action. Accordingly, because ASC faces months or years of delay – like the situation discussed in *De Almeida* – before it may even seek an ancillary proceeding, ASC lacks an adequate remedy at law.

### B. Under the facts pleaded, ASC will suffer irreparable harm if its accounts are not returned.

ASC will suffer irreparable harm if the Court refuses to exercise jurisdiction over its Rule 41(g) motion because, as noted previously, it is without an adequate remedy at law. *See Floyd v. United States*, 860 F.2d 999, 1006 (10th Cir. 1988) (explaining that a movant will suffer irreparable harm if left without an adequate legal remedy); *see also Mr. Lucky Messenger Serv., Inc. v. United States*, 587 F.2d 15, 17-18 (7th Cir. 1978) ("whenever the [g]overnment seizes a significant amount of money and withholds it for an unreasonable length of time without bringing charges . . . the plaintiff suffers irreparable harm.").

Moreover, taking the facts alleged as true, ASC will suffer irreparable injury if the funds in the seized accounts are not returned because ASC is accountable to the thousands of individual players for whom it was holding the funds, as well as to hundreds of check cashing businesses that cashed checks which subsequently bounced. ASC has received thousands of demands for repayment, and continues to receive such demands daily: from poker players, the estates of poker players, and check cashers. Many of these letters threaten civil suit or institution of criminal proceedings against ASC.[7] Additionally, ASC will likely have to close its doors if the money seized is not returned and the bank accounts are not available for business. *See Blinder, Robinson & Co., Inc. v. United States*, 897 F.2d 1549, 1557 (10th Cir. 1990) (explaining that an "ongoing business need" for seized property

---

[7] We have not attached the dozens of demand letters received by ASC because it is not appropriate for the Court to review evidence outside the pleadings at this time.

will establish irreparable injury). Therefore, if ASC's accounts are not returned, ASC will suffer irreparable injury.

### C. ASC has an interest in the seized accounts and a need for their return.

ASC is the owner of the seized accounts at Wells Fargo and Union Bank. As such, ASC undeniably has an interest in the accounts, a fact which the government has not disputed. ASC has a need for the return of the funds in the seized accounts, as discussed above, because it will not be able to satisfy its commitments to the individuals for whom it was holding funds, it is exposed to civil and criminal liability, and it will be forced to close its doors. *See United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 528 (2d Cir. 1999) (explaining that money transmitters have a need for return of seized funds "because they [are] exposed to substantial economic loss from liability to their customers.").

### D. The facts alleged show that the government acted with callous disregard for ASC's constitutional rights.

The government acted with callous disregard for ASC's constitutional rights because neither ASC, the individual players, nor the operators violated the law; the seizure was therefore unreasonable and in violation of the Fourth Amendment.[8] The warrants of seizure indicate that the seizures were premised upon violations of the Illegal Gambling Business Act ("IGBA"), 18 U.S.C. § 1955, which prohibits conducting, financing, managing, supervising, directing, or owning a "gambling business" in "violation of the law of a State or political subdivision in which it is conducted." 18 U.S.C. § 1955(b)(1)(i). Nevertheless, neither ASC nor the

---

[8] The only relevant provisions here are the statutes pursuant to which the funds were seized: §§ 1955 and 1956. The count of bank fraud in Mr. Rennick's indictment is irrelevant for purposes of determining callous disregard concerning the seizure; moreover, the count of bank fraud in Mr. Rennick's indictment is completely meritless, as bank fraud under 18 U.S.C. § 1344 requires the intent to deceive the bank "into releasing property, with the intent to victimize the institution by exposing it to actual or potential loss." *United States v. Laljie*, 184 F.3d 180, 189 (2d Cir. 1999). The government did not even make an allegation to satisfy this element of the crime in Mr. Rennick's indictment.

individual players for whom ASC was holding money, violated the IGBA. First, the law is clear that individual players cannot violate the IGBA. *See*, e.g., *United States v. George*, 568 F.2d 1064, 1071 (4th Cir. 1978). Moreover, ASC is a payment processor, not a company in the business of gambling as defined by the IGBA. *See* 18 U.S.C. § 1955(b)(1)(i). Taking the facts alleged as true, ASC could not have violated the IGBA. Finally, as discussed in great detail in ASC's Rule 41(g) motion and the Brief of Amicus Curiae Poker Players Alliance, poker is a game of skill and, consequently, is not illegal gambling. Because ASC has alleged that the government seized property involved in lawful activity, this Court must find that ASC has plausibly claimed that the government acted with callous disregard for ASC's constitutional rights when it seized ASC's accounts, and that ASC is consequently entitled to its day in court.

## CONCLUSION

For the reasons set forth above, claimant respectfully requests that this Court deny the Government's Memorandum of Law in Opposition to Account Services Corporation's Motion for Return of Property, properly construed as a Rule 12(b)(6) motion to dismiss, and order further proceedings consistent with the Federal Rules of Civil Procedure.

DATED:    August 14, 2009            Respectfully Submitted,

LAW OFFICE OF MICHAEL PANCER

/s/_____

By:   Michael Pancer

COZEN O'CONNOR

/s/_____

By:   L. Barrett Boss, *pro hac vice*
Attorneys for Movant
Account Services Corporation

**PROOF OF SERVICE**

1

2  I hereby certify that a copy of the foregoing motion was served via ECF/Pacer on August 14, 2009, upon the following counsel:

3

4  Arlo Devlin-Brown
Jeffrey Alberts

5  Assistant United States Attorneys
1 St. Andrew's Plaza

6  New York, New York 10007
Tel: (212) 637-2200

7  Fax: (212) 637-2239

8

9

10  _____
Michael Pancer (State Bar No. 43602)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28