1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| ACCOUNT SERVICES CORPORATION, | CASE NO. 09 CV 1495 JM (RBB) |
| Movant, | **ORDER DENYING MOTION FOR RETURN OF PROPERTY UNDER FED.R.CRIM.P. 41(g)** |
| v. | |
| UNITED STATES OF AMERICA, | Doc. No. 1 |
| Respondent. | |

12
13
14
15
16

17    Pending before the court is a motion by Account Services Corporation ("ASC") for the return

18 of funds seized from Wells Fargo Bank ("Wells Fargo") account number 7986104185 and from Union

19 Bank, N.A. ("Union Bank") accounts numbered 353000248 and 353000256, pursuant to

20 Fed.R.Crim.P. 41(g). (Doc. No. 1, "Mot.")  The government opposes the motion on jurisdictional

21 grounds. (Doc. No. 9, "Opp'n.")  ASC submitted a reply brief on August 14, 2009. (Doc. No. 13.)

22 Non-party Poker Players' Alliance was granted leave to appear as amicus curiae (Doc. No. 6) and

23 submitted a brief on ASC's behalf. (Doc. No. 11.)

24    The court determined the matter was suitable determination without oral argument pursuant

25 to Civ.L.R. 7.1(d).[1]   For the reasons set forth below, the court declines to exercise equitable

26 ─────────────────────

27 [1] It appears from the parties' representations that various subpoenas were issued in this matter, directing appearance of individuals and presentations of documents at the August 21, 2009 hearing.
The government submitted (but did not file) a "letter" to the court regarding the propriety of these
28 subpoenas.  In turn, ASC filed a "motion to strike" the letter as an improper communication with the court, in violation of Civ.L.R. 83.9. (Doc. Nos. 14 and 15.)  The government filed an unsolicited

1  jurisdiction and therefore **DENIES** the motion without prejudice.[2]

2  //

3  ## I. BACKGROUND

4       Movant ASC is a San Diego-based payment processor which processes payments for internet

5  poker players who hold real money accounts with online game operators or operator-designated third-

6  party processors.  (Mot. at 2.)  According to ASC, when a player desires a payout from his online

7  poker account, the operator or third-party processor will forward the requested funds to ASC for

8  disbursement.  (Mot. at 3.)  ASC then confirms the identity of the player and issues a check for the

9  requested amount.  (Mot. at 3.)  For this purpose, ASC maintains the above-mentioned bank accounts

10  with Wells Fargo and Union Bank.

11       On June 2, 2009, the Office of the United States Attorney for the Southern District of New

12  York obtained a seizure warrant for "all funds on deposit" in the Wells Fargo account.  (Mot. at 3,

13  Exh. 3.)  The warrant issued based on an affidavit filed under seal by Federal Bureau of Investigation

14  Special Agent Dana Conte, and relying on 18 U.S.C. §§ 981, 984, and 1555.  (Mot. at 3-4.)  On June

15  12, 2009, the Department of Justice notified Union Bank that exigent circumstances required freezing

16  the two ASC accounts held there to prevent dissipation of the funds, citing U.S. v. Daccarett, 6 F.3d

17  37 (2d Cir. 1993).  (Mot. at 4, Exh. 5.)  On June 24, 2009, the government obtained a formal seizure

18  warrant for the two Union Bank accounts.  (Mot. at 4, Exh. 6.)  In total, the seized funds in the three

19  accounts exceeded $14,000,000.  (Mot. at 4.)  In addition to the trust funds, the accounts included

20  ASC's operating funds and a small amount of funds unrelated to online poker.  (Mot. at 4, Exh. 2.)

21  According to ASC, at the time of the seizure, it had approximately 13,800 checks to individual players

22  outstanding.  (Mot. at 4.)

23

24  response to the motion to strike (Doc. Nos. 19-20) and ASC filed an unsolicited Reply (Doc. No. 21).
25  Because the court determined the motion was suitable for determination without oral argument, no
   hearing will be held and no evidence taken.  Thus, the improperly submitted letter has been
26  disregarded and the motion to strike is **DENIED** as moot.

27     [2] On August 18, 2009, the court received a request to appear as amicus curiae from an
   individual poker player, Norman Smith, *pro se*.  (Doc. No. 17.)  Because the issues Mr. Smith offers
28  to address in his brief do not bear on this court's exercise of equitable jurisdiction of the motion, an
   amicus brief would not affect the court's decision.  Accordingly, the court **DENIES** Mr. Smith's
   request.

By letter served July 4, 2009, ASC requested the government return the funds within 15 days or else it would file a motion for return of property. (Opp'n at 3, Exh. 4.)  The present motion was filed in this court on July 10, 2009.  Thereafter, on August 5, 2009, an indictment was filed against Douglas G. Rennick, principal of ASC, in the Southern District of New York. (Opp'n at 3.)  The indictment indicated the government would seek criminal forfeiture of the funds. (Opp'n at 3.)  An arrest warrant for Douglas Rennick issued based on the indictment but as of August 7, 2009, he had not surrendered or been arrested. (Opp'n at 3, 7 n. 3.)

//

## II.  DISCUSSION

### A.  Legal Standard

Under Fed.R.Crim.P. 41(g):

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.  The motion must be filed in the district where the property was seized.

Rule 41(g) motions are governed by the criminal procedure rules when they are "used to seek the return of seized property after an indictment has been issued." Black Hills Institute of Geological Research v. U.S. Dep't of Justice, 967 F.2d 1237, 1239 (8th Cir. 1992).  However, when Rule 41(g) motions are made before an indictment is filed, as here, they are properly "treated as civil equitable proceedings." Ramsden v. U.S., 2 F.3d 322, 324 (9th Cir. 1993); U.S. v. Martinson, 809 F.2d 1364, 1366-67 (9th Cir. 1987).  "Though styled as a motion under a Federal Rule of Criminal Procedure, when the motion is made by a party against whom no criminal charges have been brought, such a motion is in fact a petition that the district court invoke its civil equitable jurisdiction." U.S. v. Comprehensive Drug Testing, Inc., No. 05-10067 (9th Cir. Aug. 26, 2009) (citing Ramsden, 2 F.3d at 324).  Even where a particular district court has subject matter jurisdiction over the motion, the court "must exercise 'caution and restraint'" before exercising equitable jurisdiction over its merits. Ramsden, 2 F.3d at 324 (quoting Kitty's East v. U.S., 905 F.2d 1367, 1370 (10th Cir. 1990)); De Almeida v. U.S., 459 F.3d 377, 382 n. 3 ("the court correctly recognized it had subject matter jurisdiction but equitably declined to exercise that jurisdiction").

Under Ninth Circuit law, a district court should evaluate four factors when deciding whether

to exercise equitable jurisdiction over a pre-indictment Rule 41(g) motion:

> 1) whether the Government displayed a callous disregard for the constitutional rights of the movant; 2) whether the movant has an individual interest in and need for the property he wants returned; 3) whether the movant would be irreparably injured by denying return of the property; and 4) whether the movant has an adequate remedy at law for the redress of his grievance.

Id. at 325 (citing Richey v. Smith, 515 F.2d 1239 (5th Cir. 1975)).

**B. Analysis**

*1. Callous Disregard for Movant's Constitutional Rights*

ASC argues the government acted with callous disregard for its right to be free from unreasonable government seizures, as guaranteed by the Fourth Amendment of the United States Constitution, and its Fifth Amendment right to protection from property deprivation without due process. U.S. Const., amends. IV, V. ASC contends neither ASC, the individual players, nor the operators violated the law, specifically the Illegal Gambling Business Act ("IGBA"), 18 U.S.C. § 1955. As such, the government had no reasonable basis to believe the funds were contraband or evidence of a crime, a prerequisite to a finding of probable cause. In addition, the Union Bank funds were seized without a pending warrant, based solely on "non-specified" exigent circumstances. (Mot. at 4, 8-9.)

In opposing the motion, the government relies heavily on the fact the presiding judges issued the seizure warrants based on findings of probable cause. (Opp'n, Exhs. 1, 3.) The Wells Fargo warrant issued before those funds were seized. The government seized the Union Bank funds initially by claiming exigent circumstances. The Union Bank funds' continued detention was supported by a subsequently issued seizure warrant.

ASC's arguments to the contrary, the court finds the government did not act in callous disregard for ASC's constitutional rights. The seizures were effected based on seizure warrants for which the magistrate judges made neutral and independent findings of probable cause. Although ASC and Poker Players' Alliance each delve into great detail regarding the reasonableness of the warrants' issuance (Mot. at 9-16; Doc. No. 11 at 3-25), the government "cannot be expected to question the magistrate's probable-cause determination...." U.S. v. Leon, 468 U.S. 897, 921 (1984); see also Millender v. County of Los Angeles, 564 F.3d 1143, 1149 (9th Cir. 2009)(discussing officer's

reasonable reliance on warrant in the context of qualified immunity).  Furthermore, the court finds the government's reliance on the exigent circumstances exception to the warrant requirement to execute a 12-day seizure of the Union Bank funds until a warrant was obtained was reasonable given the funds' fluidity and ASC's clear intent to dissipate them.  Daccarett, 6 F.3d at 49; cf. Ramsden, 2 F.3d at 325 (agreeing with district court that government acted with callous disregard in the absence of a warrant or an exception to the warrant requirement).  In sum, the court finds the government did not act in callous disregard of ASC's rights and thus, this factor weighs in favor of the government.

### 2.  Movant's Interest in and Need for Seized Property

The government does not dispute ASC, as the holder of the accounts in question, has an interest in funds seized from those accounts.  (Mot. at 17.)  ASC also argues it needs the funds to repay check cashing businesses which paid players on the checks ASC had outstanding at the time of the seizures.  (Mot. at 17.)  The court notes ASC's claim it needs access to the funds to pay its debts and avoid civil liability underscores the exigent circumstances rationale employed by the government in effecting the Union Bank seizures.  Certainly, dissipation of the funds by ASC would make them unavailable for criminal forfeiture.  Although ASC does have a property interest in the funds, this factor is neutral.

### 3.  Irreparable Harm to Movant

In arguing it will suffer irreparable harm, ASC again points to its potential civil liability from the loss of funds and adds its ability to function as a business has been impaired by the seizures because its operating funds were comingled with the players' funds.  (Mot. at 18.)  ASC's economic injury alone generally "does not support a finding of irreparable harm, because such injury can be remedied by a damage award."  Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc., 944 F.2d 597, 603 (citing Los Angeles Memorial Coliseum Comm'n v. National Football League, 634 F.2d 1197, 1202 (9th Cir. 1980)).  Furthermore, ASC's potential exposure to civil liability or criminal prosecution is not sufficient to show irreparable harm.  Ramsden, 2 F.3d at 326.  Finally, while the negative effect of the seizure on ASC's business helps establish its interest in the funds, it does not demonstrate ASC will suffer irreparable harm.  Id. at 325.  This factor falls in the government's favor. //

### *4. Movant's Alternative Available Remedies*

ASC argues it has no other available remedy because, as of the time of filing its motion, no civil or criminal forfeiture action had been initiated.  (Mot. at 18.)  Since that time, however, a criminal indictment has been filed against Rennick, which mentions ASC as a co-conspirator.  As the government notes, a Rule 41(g) motion can be used "to trigger the filing of a forfeiture proceeding."  U.S. v. U.S. Currency, $83,310.78, 851 F.2d 1231, 1234 (9th Cir. 1988) (citing U.S. v. $8,850 in U.S. Currency, 461 U.S. 555, 569 (1983)).  In its Reply, ASC contends the filing of the Rennick Indictment does not preclude Rule 41(g) relief.  (Reply at 5.)  While ASC is correct, the question before the court is whether the availability of an alternative legal remedy warrants dismissal of ASC's motion. The fact that the alternative remedy was unavailable when ASC filed its motion is unpersuasive.[3]

The court finds ASC does have an adequate legal remedy available:  an ancillary proceeding in the criminal action itself.  Pursuant to 21 U.S.C. § 853(n), once a criminal proceeding has concluded, any non-defendant may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property."  The Second Circuit has noted that while a civil forfeiture proceeding will generally provide a third-party claimant with an adequate legal remedy, the potential delay involved in a criminal forfeiture proceeding may affect whether the § 853(n) recovery route is sufficient.  De Almeida, 459 F.3d at 382.  Particularly in light of this court's conclusion ASC would not suffer irreparable harm if the court declined to exercise equitable jurisdiction, the court also finds a potential delay in resolving the criminal matter would unduly prejudice ASC.  Furthermore, for this court to exercise jurisdiction over the motion, which deals with similar substantive issues present in the New York criminal proceeding, would certainly duplicate judicial resources and risk contrary decisions regarding the property.     The court therefore concludes ASC has an adequate, although imperfect, legal remedy available to it.  This factor weighs in the government's favor.

//

//

---

[3] With its Reply, ASC requested an order allowing it to file an exhibit under seal which addressed the government's argument that ASC was an "alter ego" of Rennick. Because the court has resolved this matter without relying on that argument, the motion to file under seal is **DENIED** and the Exhibit has not been considered.

**III.  CONCLUSION**

For the reasons set forth above, the court declines to exercise equitable jurisdiction over ASC's motion for return of property.  Accordingly, the motion is **DENIED**.  (Doc. No. 1.)  The Clerk of Court is instructed to close the case file.

**IT IS SO ORDERED.**

DATED:  August 27, 2009

Hon. Jeffrey T. Miller
United States District Judge

cc:        Kathleen A. Cashman-Kramer, Pyle Sims Duncan and Stevenson
           Lynne R. Lasry, Sandler Lasry Laube Byer and Valdez
           John Mayers, Mulvaney Kahan & Berry